## Joseph Goodrich *vs.* Israel Longley & others.

G., in consideration of $200, conveyed by indenture to L. his heirs and assigns " the right and privilege of constructing and building a dam upon the land of G. at the outlet of M. Pond, for the purpose of raising a head of water upon said pond; the right and privilege of entering upon and passing over the land of G. for the purpose of viewing said dam, for making repairs upon and altering the same, and for all other necessary purposes connected therewith; full liberty of taking stone and gravel upon the land of G. for the purpose of building and constructing said dam, and hereafter, for the purpose of repairing the same, the right and privilege of digging gravel out of the southwest side of said outlet, and near the same;" and it was agreed that the amount of damage done to G., by the flowing of his land caused by building said dam, should be determined by an arbitrator, and that the sum so determined should be paid and received in full satisfaction for such damages. *Held*, that this indenture did not authorize L., after erecting and completing one dam on G.'s land, to enlarge the same so as to flow more of G.'s land; and that G., in an action brought against L. for trespassing on his land in so enlarging the dam, might show, by parol evidence, the limits of the dam as originally built.

Action of tort for breaking and entering the plaintiff's close in Lunenburg. The defendants admitted the entry, and justified under a sealed agreement between Goodrich and Longley and others, dated March 9th 1846.

By this agreement, Goodrich conveys to Longley and others and their heirs and assigns " the right and privilege of constructing and building upon the land of said Goodrich, at the outlet of Mashapog Pond, a dam for the purpose of flowing and rais-ing a head of water upon said pond," with covenants of seizin

and warranty; " the right and privilege of entering upon and passing over the land of said Goodrich for the purpose of viewing said dam, for making repairs upon and altering the same, and for all other necessary purposes connected therewith; full liberty of taking stone upon the land of said Goodrich for the purpose of building and constructing said dam, and the right and privilege of taking and digging gravel, for the purpose of building said dam, in any place on said Goodrich's land; and hereafter, for the purpose of repairing the same, they shall have the right and privilege of digging gravel out of the southwest side of said outlet and near the same." The grantees agree to pay, " for the privileges and rights herein conveyed by said Goodrich, the sum of two hundred dollars." And there is a further mutual agreement, that if the parties shall be unable to agree upon the amount of damage which shall be done to Goodrich by the flowing of his land caused by building said dam, Amos Hawes of Leominster shall determine the amount of damage so sustained or to be sustained by Goodrich, and the sum so determined shall be paid and received in full satisfaction for such damages. And " it is the understanding of the parties to this agreement, that the covenants of said Goodrich shall never be so construed as to render the said Goodrich liable for any damage done to any person whatever by reason of raising a head of water upon said pond."

At the trial in the court of common pleas, after the defendants had given in evidence this agreement, the plaintiffs offered to prove that after this agreement was made, to wit, in the fall of 1846 and the spring of 1847, the grantees marked out the limits of a dam, and proceeded to erect and did erect and complete a dam of the height of three feet, of the length of one hundred and fourteen feet, and of the width of twenty feet; and that the acts complained of were done in raising the dam to the height of ten feet, extending its width to fifty five feet, and its length to two hundred and thirty two feet; and that by the raising of the dam a larger portion of the plaintiff's land would be flowed.

But *Byington*, J. ruled that this evidence was inadmissible,

and directed a verdict for the defendants. The plaintiff alleged exceptions to this ruling.

*F. H. Dewey & G. F. Hoar*, for the plaintiff, cited *Choate* v. *Burnham*, 7 Pick. 274; *Cambridge* v. *Lexington*, 17 Pick. 222; *Clark* v. *Munyan*, 22 Pick. 410; *Waterman* v. *Johnson*, 13 Pick. 261; *Dryden* v. *Jepherson*, 18 Pick. 385; *Stone* v. *Clark*, 1 Met. 378; *Frost* v. *Spaulding*, 19 Pick. 445; *Makepeace* v. *Bancroft*, 12 Mass. 469; *Blaney* v. *Rice*, 20 Pick. 62; *Jones* v. *Percival*, 5 Pick. 487; *Russell* v. *Jackson*, 2 Pick. 574; *Wynkoop* v. *Bur ger*, 12 Johns. 222.

*C. Allen*, for the defendants, cited *Boynton* v. *Rees*, 8 Pick. 329; *Baker* v. *Sanderson*, 3 Pick. 348; *Howard* v. *Bates*, 8 Met. 484.

THOMAS, J. The ground, upon which the evidence was rejected, probably was, that the grant of the plaintiff was without restriction as to the quantity of land to be taken, or the time within which the dam was to be constructed. It would certainly be difficult to fix the limitation of either, but it by no means follows that the grantees, after the limits of a dam had been marked out and the structure fully completed, would have the right either to make a new location, or so to change the structure as to cover more land of the grantor or cause more of his land to be flowed. On the other hand, the reasonable construction of the grant seems to us to be, that when the grantees had located their dam and completed the structure, the right of appropriating the land of the grantor for that purpose was exhausted. The plaintiff offered to prove that this had been done, and his evidence for that purpose should have been admitted.

It may well be that the grantees might have elected to build a dam of the present height and dimensions, and that such election might have been made at as a late a time as when this dam was extended, but it does not follow that, having made their election, and built in conformity to it, they would have the right to change. Such construction would not only make the grant indefinite in terms, but incapable of being defined by the acts or practical construction of the parties, and whenever this enlargement had been made, would leave the parties at liberty to raise and extend the dam at their pleasure.

52 *

It is quite clear from the provisions of the agreement, inarti-ficially as it is drawn, that the parties contemplated no such result.

These provisions indicate that the parties had in their minds a grant, the limits and bounds of which, if not accurately ascer-tained in the written contract, were capable of being fixed by the acts of the parties themselves.

It was suggested in argument, that under the power of entry upon the grantor's land for viewing, making repairs and " alter-ing the same," the defendants would be justified in the extension the plaintiff offered to prove. But in determining the meaning of the words, " altering the same," the familiar rule, *noscitur a sociis,* applies, and the right must be limited to alterations re-quired for the safe and convenient use of the original structure. The right granted is of entering upon and passing over the land of the grantor, and not of making a new appropriation of land for the purpose.

The evidence offered, as tending to establish the bounds or limits of a grant, indefinite in its terms, by the acts and practical construction of the parties, or tending to show that the right granted by a written license had been used and exhausted by the grantees, was competent. *Baker* v. *Sanderson,* 3 Pick. 348. *Makepeace* v. *Bancroft,* 12 Mass. 469. *Dryden* v. *Jepherson,* 18 Pick. 385. *Stone* v. *Clark,* 1 Met. 378. *Howard* v. *Bates,* 8 Met. 484. *Exceptions sustained.*

On a new trial in the court of common pleas at December term 1854, the jury disagreed; but the case was tried again at March term 1855, when the plaintiff obtained a verdict.